HALL v. HARRINGTON.

1. FRAUD.

A wife who has a claim for alimony and a suit pending to secure a divorce and compel its payment is a creditor within the purview of the statute of frauds, and if a deed is made directly for the purpose of defrauding her, she may maintain a bill to set it aside.

2. JUDGMENT—ALIMONY—LIEN.

A decree of divorce allowing alimony is a judgment enforcible by execution, and it may be made a lien upon the real estate of the judgment debtor by filing a transcript in the office of the county clerk.

3. SAME.

Courts having authority to render decrees of divorce have power to make their decrees effectual by declaring them liens on the property owned by the defendant in the state.

4. JURISDICTION OF COUNTY COURT.

While the limit of the county court's jurisdiction is $2,000, that limit is not exceeded by adjudging in a divorce case that the defendant pay plaintiff $1,000, $200 to her counsel, and $30.00 per month for the maintenance and education of two children.

*Appeal from the District Court of Arapahoe County.*

THIS suit and the one following, of *Harrington v. Johnson, post,* p. 483, were tried together, and both appeals were argued and submitted at the same time, though upon different briefs. This comes from the circumstance that they are the outgrowth of another litigation, but were necessarily brought against two people because they concerned different lots of property which had been transferred to them by trust deeds operating as a security for alleged debts of George Harring-

ton. One general statement will suffice for both. The differentiating facts will be stated in each case.

Lucy Harrington and George intermarried in 1882, and had issue two children. A disagreement sprung up between them, and she brought a suit for divorce in July, 1892. It was commenced by a personal service of the summons and complaint, and afterwards proceeded to judgment and decree in the following January. According to the terms of this decree, the defendant was bound to pay $1,000 alimony in two equal installments of $500, $200 attorney's fees, and the sum of $30.00 a month from the 1st day of January, 1893, for the maintenance and education of the two children. The judgment was filed in the county clerk's office according to the requirements of the statute to make it a lien on realty on the 18th of that month. The decree in the county court which divorced the parties and provided for the payment of the alimony specified that the several sums should be a lien on all the real estate belonging to George Harrington in the state of Colorado, and empowered the plaintiff, in case of his failure to pay, to sell the real estate, or so much of it as might be necessary to enforce the judgment. We observe the property was not specifically described either in the complaint or in the decree.

After the divorce suit was begun, and with the evident purpose to defeat any possible judgment for alimony which the plaintiff might obtain, George Harrington attempted to. incumber all his property in favor of his two sisters, to whom he owed divers sums of money. He was indebted to Sarah A. Hall, the appellant, in the sum of $950. The original debt was evidenced by two promissory notes,—one of $800, and one of $200. These were signed by both George and Lucy, and only $100 had been paid on them. George owned two lots of property,—one in Cottage Hill addition to the city of Denver, and the other in what is known as "De Lappe Place." In the present suit we are only concerned with the Cottage Hill lots. His interest was an undivided half in six lots, 13 to 18, inclusive, in block 16 in the addi-

tion.   The divorce suit was begun July 9th.   On the 12th he made out a note for $950, signed and acknowledged a trust deed on these lots to secure the new note of $950, for the apparent benefit of his sister.   He contends the note and mortgage were sent immediately to Mrs. Hall, whereby she became entitled to both the note and the security afforded by the deed.   The court found that the note and deed were simply executed to defeat any possible decree for alimony, and were not delivered to Mrs. Hall until after the decree was entered in January, and after its record in the office of the clerk and recorder.   George himself testifies he made out the note and deed without any knowledge on the part of his sister, though he claims he sent it directly to her. The trustee, Clinton, started a foreclosure by advertisement, and Mrs. Harrington brought this action.   The plaintiff sought to restrain the enforcement of the trust deed because the note and mortgage were fraudulent as against her.   This claim was based on the nondelivery of the deed, the priority of the lien for the alimony, the insolvency of the principal judgment debtor, Harrington, and the knowledge and concurrence of Mrs. Hall in the fraud.

The allegations of the complaint need not be further stated, and the opinion will be based entirely on the findings of the court.   The court concluded the note and deed were made to prevent the enforcement of the decree for alimony ; that they were not delivered until after the filing of the transcript of judgment, and that Mrs. Hall had no knowledge whatever of the execution of the note and the deed. He finds they were not given as security and were not given in payment.   He found the only property which Harrington owned at the time the decree was entered was what he conveyed to Mrs. Hall and Mrs. Johnson, and that the decree was a valid lien on the property which was situate in Arapahoe county.

Mr. A. B. SEAMAN, for appellant.

Messrs. FELKER & DAYTON, for appellee.

BISSELL, J., delivered the opinion of the court.

The first point to which our attention is directed by counsel for the appellant is put thus : " The court erred in finding the material issues joined in favor of the plaintiff." Unless we consent to build on this foundation, we are without the material with which to construct the building according to the appellant's plan.    Appellate courts are sometimes somewhat chary of expressing their conclusions respecting testimony, and are wont to shield themselves behind the tolerably well established rule that the findings of a trial court, like the verdict of a jury, must be taken as conclusive on all questions of fact.    Courts sometimes conceive it to be their duty to see that justice is done, and, when occasion requires, to go behind the finding of the verdict to enforce their conclusions.    We are called on by counsel to perform that duty in the present case, and an attempt is made to furnish a basis for the departure by the suggestion that the trial of the cause was partly by oral testimony and partly by deposition, thus argumentatively bringing the case within the rule declared by the supreme court that wherever a cause is tried on depositions, it is the duty of the appellate tribunal to sift and weigh the evidence and determine where the truth lies.    We do not pass on this suggestion, but if we should accede to the request, it would not vary the result. We are in entire accord with the trial court in its conclusions.    The note and the trust deed were undoubtedly made by George Harrington and the deed filed for record without the knowledge of his sister, Mrs. Hall, and to forestall any ultimate decree for alimony which the court might render.    He made altogether too close connections between the commencement of the divorce suit and the preparation and record of the deed.

The suit was started on the 9th of July, and within less than three days, and before the time for answering expired, he attempted to incumber the record with a deed which should take away the entire value of the property as against

any judgment which might be rendered. The trust deed was not given to secure the outstanding notes which had been executed by himself and his wife to Mrs. Hall, but to secure a new note given by him alone, and for a sum presumably equal to the amount represented by the paper which his wife had signed. It is an open question when the note and the trust deed were delivered. We are not inclined to accept the statements made by the appellant's witnesses. The notes are not traced, nor is the time, nor are the circumstances of the delivery so perfectly stated as to convince us the parties are telling the entire truth respecting it. It was a matter very susceptible of exact ascertainment, and it was for Mrs. Hall, it being within her power, to produce evidence which should definitely determine this question, if she intended to rely on it for the purposes of a defense. We have very grave doubts whether the note and trust deed were ever delivered to Mrs. Hall until after the record of the decree in the clerk's office in Arapahoe county. At all events, whether this be or be not true, the court has found the $950 note and the trust deed were not delivered to Mrs. Hall either to pay the two notes which she held, or to secure their payment. Under these circumstances, it is manifest Mrs. Hall acquired no rights by virtue of her receipt of the trust deed and note as against the judgment which Mrs. Harrington obtained. As we have already said, we not only accept the court's findings on these questions, but as a result of our examination of the record we concur in them.

As we have had occasion to say in the succeeding case of *Harrington v. Johnson*, which is a counterpart to this, it is pretty well settled that a wife who has a claim for alimony and a suit pending to secure a divorce and compel its payment is a creditor within the purview of the statute of frauds, and where a deed has been made for the purpose of defrauding her, although she may be technically what is called a "subsequent creditor," yet, if the deed is made directly and distinctly for that purpose, she may maintain a bill to attack the transfer. According to our views, this deed comes with-

in the four corners of the various decisions on this question. The trust deed was executed for a fraudulent purpose,—to secure a note which had no legal existence and for which there was no consideration. It was not given to take up the other two notes nor to secure them. So far as we know, it represents no debt and there may be a perfect defense to it. Mrs. Harrington became a creditor when she recovered the judgment, and she therefore has the right, under the authorities, to attack the trust deed and prevent its enforcement. We do not think the court erred in entering its decree. *Gregory v. Filbeck*, 12 Colo. 379; *Mitchell et al. v. Sawyer et al.*, 115 Ill. 650; *Morrison v. Morrison et al.*, 49 N. H. 69; *Bouslough v. Bouslough*, 68 Pa. St. 495; *Turner v. Turner*, 44 Ala. 437; *Dugan v. Trisler et al.*, 69 Ind. 553; *Bailey v. Bailey*, 61 Me. 361; *Hinds et al. v. Hinds*, 80 Ala. 225; *Burrows v. Purple*, 107 Mass. 428.

The decree of the county court which adjudged alimony to Mrs. Harrington attempted to make the sum a lien on the property involved in the present suit. The present suit is contended to be unmaintainable because there was no specific description of the property either in the bill or in the decree. It is insisted county courts have no jurisdiction except as to property within the limits of the county, and are powerless to render decrees which shall be liens on property without their territorial limit. It is quite possible this may be true. We express no opinion respecting it. It may likewise be conceded there is grave doubt whether the decree was operative to establish a lien on the property so as to defeat the claims of *bona fide* creditors or purchasers for value or any other person who might be brought within either class. It is a very general rule there must be some specific description of the property to be affected by the judgment either in the bill or at least in the decree, if the lien depends on the terms of the decree for its existence. While this is true, there seems to be no trouble to regard the decree of the county court as a lien on this property as against Mrs. Hall, without doing violence to any well recog-

nized legal or equitable principle. Even though the decree might not operate to establish a lien, yet if it was valid as a decree for divorce and as one adjudging alimony against the husband, it became thereby as to the sums therein mentioned a judgment against Harrington for so much money, which was enforceable in the ordinary way by execution. The filing of a transcript of this judgment in the county clerk's office would make the judgment a lien on the property, which is concededly within the limits of Arapahoe county, wherein the decree was entered and wherein it was also recorded. Under these circumstances, we see no reason to disturb the judgment because the decree of the county court may be in some particulars open to criticism. The power of courts which have authority to render decrees of divorce to make their decrees effectual by declaring them liens on property owned by the defendant in the state has been adjudged by this court in a recent case, wherein the whole subject was thoroughly examined by the learned judge writing the opinion. *Hanscom v. Hanscom et al.*, 6 Colo. App. 97.

We do not regard Mrs. Hall as in a position to raise this question, because she is neither a *bona fide* purchaser nor a creditor, nor an incumbrancer for value, and, as between George Harrington and Mrs. Harrington, the decree of the county court was effectual, for it stands unreversed and was unappealed from by him. When these facts are coupled with the proof respecting the property, the insolvency of Harrington, and the record of the judgment, we think the plaintiff was abundantly entitled to maintain the bill which she filed and the decree may be upheld.

The decree of divorce is attacked because it is assumed to be for more than the sum of $2,000, which is the limit of the jurisdiction of the county court. We do not accept counsel's contention respecting it. The decree directed alimony to the extent of $1,000 to be paid to Mrs. Harrington in two installments, $200 to be paid to counsel for their services in the case, and further provided for the payment of $30.00 a month thereafter for the maintenance and education of the

two children of the marriage during their minority. The
argument is, since $360 a year is to be paid during the
minority of the two children, if they should live to be
twenty-one, it would make the total amount paid by the
defendant more than the sum of $2,000, which would take
the case out of the jurisdiction of the county court and ren-
der it void because of this excess. The argument seems to
be entirely fallacious, although very considerable nicety of
reasoning has been exhibited by counsel in support of this
contention. We look at the judgment as one substantially
for $1,230, as originally entered. This, of course, was within
the county court's jurisdiction. In reality the decree with
reference to the $30.00 a month was in no sense alimony,
and no part of the money which was to be paid to Mrs. Har-
rington for her support and comfort, but was a sum decreed
against the husband for the care and maintenance of the
children which were left in the custody of the wife. They
were the husband's children ; he was bound both in law and
morals to maintain and educate them ; the sum adjudged for
that purpose was a very modest sum, and not more than
would be apparently adequate for the purpose. From its
receipt and expenditure the wife derived no advantage, and
we are unable to see that the decree in this respect so alters
its fundamental character as to take it out of the jurisdiction
of the county court. The position is not well taken.

There is but one remaining proposition to which we need
pay any attention in order to dispose of all the practical
questions involved. The rule that he who seeks equity must
do equity, is invoked in favor of Mrs. Hall because of her
ownership of the two notes of $800 and $200, which are
assumed to be still unpaid. It is insisted since Mrs. Harring-
ton signed those notes and owes the debt with her husband,
it would be inequitable to permit her to enforce her decree
for alimony as against this property to the destruction of the
trust deed which Mrs. Hall holds. The features of the case
are not such as to permit the application of the doctrine.
According to the findings of the court, the deed was not a.

security. It was fraudulently executed to defeat Mrs. Harrington's claim, and Mrs. Hall is without right to hold it, because she is neither a creditor nor a purchaser with respect to the note secured by it. She took the $950 note neither in payment nor as security for the other two, and she is therefore not the holder of any claim conveyed by or embraced within the terms of the deed. It is quite within the range of possibility Mrs. Harrington may simply have been security on those two notes and her husband the principal debtor, who has long since liquidated them. At all events, whether this be or be not true, when once it is conceded the trust deed is fraudulent as against the judgment which Mrs. Harrington obtained, and that Mrs. Hall is without legal or equitable right to the security or the note which it covers, she cannot import into the case an outstanding legal liability on the part of Mrs. Harrington to defeat her right to invalidate the security and subject the property to the payment of her judgment. Besides, the matter was not litigated on any such hypothesis, the notes were not claimed as a set-off, nor is it at all clear the right to offset the one claim by the other could ever exist. We are unable to see any force in the suggestion respecting the applicability of this well understood doctrine.

There seems to be presented in the arguments no other proposition which calls for discussion. As to some of the questions suggested, the opinion of the court about them has been very fully covered by the opinion in the other case, and so far as we can see the court has expressed itself on every proposition presented by the appeal.

We are unable to perceive any errors in the record which require us to reverse the judgment, which will accordingly be affirmed.

*Affirmed.*