## Wytheville.

### CROWDER V. CROWDER AND OTHERS.

#### June 12, 1919.

1. APPEAL AND ERROR—*Final Judgments and Decrees—Principles of the Case.*—A suit was brought by a wife for a divorce on the ground of desertion and incidentally to set aside as fraudulent the sale of certain property made by the husband to his brothers. There was a preliminary motion to dismiss the appeal on the ground that the decree appealed from was not final, and did not adjudicate the principles of the cause. It was clear that the decree was not final, as the divorce prayed for was not granted. The decree, however, contained the opinion of the court that the brothers were guilty of no fraud in the purchase of the property from the husband, and that the fund to the credit of the court arising from the proceeds of notes given for the property was the property of the husband, and should be paid over to the wife as alimony, but for an interpleader improperly allowed.

*Held:* That the decree appealed from did adjudicate the principles of the cause. The wife claimed that she was entitled to a divorce on the ground of desertion by her husband, and this claim was in effect sustained. She further claimed that the sales from her husband to his brother were in fraud of her marital rights, and that she had the right to have them set aside and the property subjected to her demands. This claim was overruled and the sales declared to be free from fraud.

2. DIVORCE—*Fraudulent Sales and Conveyances—Evidence — Evidence of Fraud of Husband.*—In a suit for divorce on the ground of desertion and incidentally to set aside as fraudulent the sale of certain property by the husband to his brothers, while the testimony did not show that either of the brothers counseled or advised the husband to abandon his wife, the circumstances tended strongly to show that he had no intention of leaving her until after a conversation with one of the brothers, and that both brothers, with full knowledge of his abandonment of his wife and child, did aid and abet him in putting his property beyond the reach of any claim the complainant might assert against it.

*Held:* Upon this and other evidence that the conclusion was irre-

sistible, that the husband committed a fraud upon the rights of his wife and child, and that his brothers participated therein and aided and abetted him in the accomplishment of his purpose, and that the brothers "had notice of the fraudulent intent of his immediate grantor," and' were not such purchasers as are protected by section 2458 of the Code of 1904.

3. FRAUD—*Evidence—Express Proof.*—While fraud must be clearly proved by him who alleges it, it is not necessary that it should be expressly shown. It is rare that it can be. The participants are not apt to discuss it, but actions speak louder than words, and the transaction itself ·often furnishes proof of the fraud that is entirely satisfactory.

4. FRAUDULENT SALES AND CONVEYANCES—*Positive Knowledge of Grantee.*—Where the fraud of a grantor in a deed, or of a seller of personal property, has been clearly shown, and it is sought to charge the grantee or purchaser with guilty knowledge, it is not necessary to prove that the latter had positive knowledge of such fraudulent intent. It is sufficient if he has knowledge of such facts and circumstances as would have excited the suspicion of a man of ordinary care and prudence, and put him upon such inquiry as to the *bona fides* of the transaction as would necessarily have led to the discovery of the fraud of the grantor or seller.

5. DIVORCE—*Fraudulent Sales and Conveyances—Transfer in Fraud of Wife—Wife as Creditor.*—Immediately upon desertion entitling the wife to a divorce and to alimony as incidental thereto, there has been a breach of duty on the part of the husband for the enforcement of which the law gives her a remedy against him and his property, and if he transfers his property to another with intent to hinder, delay or defraud her in the enforcement of her right, such transfer is void. She comes within the classification of "other persons" mentioned in section 2458 of the Code (1904), who are protected against being defrauded by such transfer, of "what they are or may be entitled to." It is not necessary that she should be a creditor in a technical sense.

6. DIVORCE — *Fraudulent Sales and Conveyances — Interpleader — Transfer of Notes.*—In a suit for divorce on the ground of desertion and incidentally to set aside as fraudulent the sale of certain property by the husband to his brothers, the bill prayed that the brothers be enjoined from disposing of the property, or paying the notes given by the brothers therefor to the husband, or any one else. Complainant laid no claim to the notes in controversy or the proceeds thereof unless they were still held and owned as the property of her husband. What was sought by the bill was to set aside the sales of the property, although the wife was willing to take the value of the notes in lieu of pursuing the property itself.

*Held:* That it was error to require the transferee of the notes to come into the suit as party defendant. The claims of the wife and the transferee were entirely separate and distinct, that of the wife being a right to subject the property itself, and that of the transferee to resort only to the personal liability of the makers of the notes.

7. LAW OF THE CASE—*Refusal of Appeal.*—The refusal of an appeal from the action of the trial court in overruling the demurrer to complainant's bill settled that question adversely to defendant's claim and became the law of the case, and cannot again be brought in question on an appeal from the decree in the suit.

8. DIVORCE—*Fraudulent and Voluntary Conveyances—Personal Decree—Order for Payment into Court.*—In a suit for divorce on the ground of desertion and incidentally to set aside as fraudulent the sale of certain property by the husband to his brothers, upon satisfactory proof of the participation of the brothers in the fraud of the husband, it was competent for the court to have rendered a personal decree against them in favor of the complainant for the amounts of their respective purchases from her husband, so that they were not hurt by the decree requiring them to pay said amounts into court.

Appeal from a decree of the Circuit Court of Lunenburg county. Decree for defendants. Complainant appeals.

*Reversed and remanded.*

The opinion states the case.

*W. Moncure Gravatt* and *N. S. Turnbull, Jr.,* for the appellant.

*L. O. Wendenburg, Geo. E. Allen, W. R. Jones* and *L. S. Epes,* for the appellees.

BURKS, J., delivered the opinion of the court.

This is a suit for divorce on the ground of desertion, brought by Lavonia Ruth Crowder against her husband, W. Scott Crowder, and incidentally to set aside as fraudulent

the sale of certain real estate made by the husband to his brother, J. N. Crowder, and of a stock of shoes to his brothers, J. N. Crowder and W. A. Crowder. The husband was a non-resident of the State and was proceeded against by order of publication. He has never in any way appeared in the cause. Pending the suit, the amount agreed to be paid for the land and shoes was paid into court, under an order requiring it.

[1] There was a preliminary motion to dismiss the appeal on the ground that the decree appealed from was not final, nor did it adjudicate the principles of the cause. It is very clear that the decree was not final, as the divorce prayed for had not been granted. The decree, however, contains the opinion of the court "that J. N. Crowder and W. A. Crowder were guilty of no fraud" in the purchases aforesaid from their brother W. Scott Crowder, and "that the fund to the credit of the court arising from the proceeds of said notes was the property of W. Scott Crowder, and as such should be paid over to Lavonia Scott Crowder as and for alimony," but for the pending claim of J. J. McFeeley, who had been impleaded in the cause and claimed said proceeds as hereinafter set forth. This was an adjudication of all the questions raised by the complainant's bill. She claimed that she was entitled to a divorce on the ground of disertion by her husband, and this claim was in effect sustained. She further claimed that the sales from her husband to his brothers was in fraud of her marital rights, and that she had the right to have them set aside and the property subjected to her demands. This claim was overruled, and the sales declared to be free from fraud. As we shall see later, McFeeley was improperly impleaded in the cause, and it should have been dismissed as to him. It is unnecessary to cite authority to show that the decree appealed from did adjudicate the principles of the cause. The motion to dismiss will, therefore, be overruled.

[2]   The fraud of W. Scott Crowder on the marital
rights of his wife is too fully established to admit of con-
troversy, and no effort has been made to deny it.   The chief
controversy has been over the participation therein of his
brothers, W. A. Crowder and J. N. Crowder.

Section 2458 of the Code (1904) declares that every gift,
conveyance, assignment or transfer, etc., made with intent
to hinder, delay or defraud creditors, purchasers or *other*
*persons* of, or from, what they are or may be lawfully en-
titled to, shall, as to such creditors, purchasers or *other*
*persons*, be void.   It further provides that the title of a
purchaser for valuable consideration shall not be affected
*unless it appear that he had notice of the fraudulent intent*
*of his immediate grantor,* or of the fraud rendering void
the title of such grantor.   We shall inquire, therefore,
whether W. A. Crowder and J. N. Crowder come within the
purview of this section.   That they are purchasers for value
is admitted, but that they are without notice of the fraud
of W. Scott Crowder, from whom they purchased, is de-
nied.   The statute in terms applies to transfers of per-
sonal as well as real estate.

The complainant, a girl eighteen years of age, who had
been reared in the country, came to the town of Victoria on
a visit to her cousins in July, 1914, and while there was
employed by W. Scott Crowder, a man about thirty-six
years of age, as a clerk in his shoe store, and began work
September 1, 1914.   She continued in this employment till
March, 1916, when she was forced to give up her employ-
ment because she was about to become a mother.   She in-
formed W. Scott Crowder of her condition, and he said
they would get married, but requested that she should say
nothing about it.   Later on, when she again mentioned the
subject to him, "he said he was sorry, and if he married,
his people would turn him down, and he did not know what
to do."   On Saturday, April 8, 1916, she gave birth to a

child, and on the same day a license was procured, and they were married. It may be conceded that the marriage was forced, or, as W. Scott Crowder told his sister-in-law a few days later, it was a case of "bloodshed or marriage."

While the testimony does not show that either of the brothers counseled or advised W. Scott Crowder to abandon his wife, the circumstances tend strongly to show that he had no intention of leaving her until after the conversation hereinafter mentioned with W. A. Crowder on Thursday night before he left, and that W. A. and J. N. Crowder, with full knowledge of his abandonment of his wife and child, did aid and abet him in putting his property beyond the reach of any claim the complainant might assert against it.

The marriage took place on Saturday, April 8, 1916. From that time till the following Thursday he appears to have been attentive to his wife, bringing her fruits and flowers, coming to her room immediately upon returning from his mail route, discussing with her their future location, endeavoring to obtain board for both of them, seeking to rent a house, acknowledging the child to be his and saying to the nurse that "he expected to make a man out of him." On Thursday night following the marriage, however, about ten or ten-thirty o'clock, after he had retired and gone to sleep at the house where his wife was confined, his brother, W. A. Crowder, called and had him waked up, and they had a conversation of at least an hour. The next day his whole attitude towards his wife had changed. He declared that he could not stand her, that the child was not his, and he would not stay and take care of it, and announced his firm determination to leave Victoria if he lost every dollar he had, notwithstanding he was advised by his counsel of the danger of being indicted for deserting his wife. He then set about arranging the sale of his stock of goods to his two brothers and of his real estate to one of

them.   His stock of goods consisted of shoes.   He proposed that these should be inventoried at cost, and that his brother, W. A. Crowder, should take the men's shoes at the inventory value, and his brother, J. N. Crowder, should take the ladies shoes at the inventory value.   His real estate consisted of a store-house and lot and a vacant lot.   These he valued at $8,500.   There was a mortgage on the store-house lot of $4,000, and he was indebted to his brother, J. N. Crowder, in the sum of $1,500.   He proposed that his brother, J. N. Crowder, should assume the mortgage of $4,000, cancel his debt of $1,500, and execute his negotiable note for $3,000, on twelve months time, and he caused to be prepared and executed the day before he left a deed conveying the real estate to the said J. N. Crowder, on the above terms, without reserving any lien for the $3,000. This deed was left with W. A. Crowder to be delivered by him to his brother, J. N., if he should accept the proposal. If the brothers accepted the proposed sale of the shoes, they were to execute their negotiable notes therefor at twelve months time, with interest from date.   These proposals were made after he had abandoned his wife, and, if accepted, the notes of the purchasers were to be forwarded to Scott Crowder at an address to be thereafter furnished by him.   After Scott Crowder had gone, J. N. Crowder was communicated with and came to Victoria, and the offers of Scott were made known to him by his brother, W. A. Crowder.   The offer to both brothers were accepted, the goods were inventoried, and they executed their negotiable notes therefor bearing date April 26, 1916, just eleven days after his departure, and forwarded them to W. Scott Crowder at St. Louis, Mo., in accordance with an address furnished by him.   He furthermore stated when the proposals were made, that he would endeavor to discount the notes with some one who would indulge them further in the event they were unable to pay the notes at maturity.   These

notes were executed by the makers with full knowledge that Scott Crowder had abandoned his wife and left the State, and that their notes were to be discounted. The testimony shows that W. A. Crowder had actual knowledge of all the circumstances of the marriage and abandonment, and the reasons therefor, and the attending circumstances plainly indicate that this knowledge was communicated to J. N. Crowder before the notes were executed.

W. Scott Crowder left Victoria on Saturday morning, April 15, 1916, just one week after his marriage, having first withdrawn all the money he had in bank, to-wit, five hundred dollars. When he received his brothers' notes, executed under the circumstances hereinbefore stated, he had in his pocket his entire estate. Nothing was left for his wife and child. Upon this state of facts, the conclusion seems irresistible, not only that W. Scott Crowder committed a fraud upon the rights of his wife and child, but that his brothers participated therein and aided and abetted him in the accomplishment of his purpose.

[3, 4] While fraud must be clearly proved by him who alleges it, it is not necessary that it should be expressly shown. It is rare that it can be. The participants are not apt to discuss it, but actions speak louder than words, and the transaction itself often furnishes proof of the fraud that is entirely satisfactory. *Hazlewood* v. *Forrer,* 94 Va. 703, 27 S. E. 507; *Todd* v. *Sykes,* 97 Va. 143, 33 S. E. 517. Where the fraud of a grantor in a deed, or of a seller of personal property, has been clearly shown, and it is sought to charge the grantee or purchaser with guilty knowledge, it is not necessary to prove that the latter had positive knowledge of such fraudulent intent. It is sufficient if he has knowledge of such facts and circumstances as would have excited the suspicion of a man of ordinary care and prudence, and put him upon such inquiry as to the bona fides of the transaction as would necessarily have led to

· the discovery of the fraud of the grantor or seller. *American Net, etc., Co.* v. *Mayo,* 97 Va. 182, 33 S. E. 523; *Anderson* v. *Mossy Creek Co.,* 100 Va. 420, 41 S. E. 854; *Flook* v. *Armentrout,* 100 Va. 638, 42 S. E. 686.

If the notes given by W. A. Crowder and J. N. Crowder had not been negotiable, they might have protected themselves against the payment thereof in the event the complainant attached the property sold, and if they have lost that right in their efforts to aid their brother in his fraudulent scheme, they have no one to blame but themselves. We are of opinion that W. A. Crowder and J. N. Crowder, each "had notice of the fraudulent intent of his immediate grantor," and hence is not such a purchaser as is protected by section 2458 of the Code (1904).

[5] It is held in some jurisdictions that a wife becomes a creditor or a quasi-creditor of her husband immediately upon his desertion. *DeRuiter* v. *DeRuiter,* 28 Ind. App. 9, 62 N. E. 103, 91 Am. St. Rep. 107; *Hall* v. *Harrington,* 7 Colo. App. 474, 44 Pac. 365; *Bouslough* v. *Bouslough,* 68 Pa. 495. It is not necessary for us to pass upon that subject. It is enough to say that immediately upon desertion entitling the wife to a divorce and to alimony as incident thereto, there has been a breach of duty on the part of the husband for the enforcement of which the law gives her a remedy against him and his property, and if he transfers his property to another with intent to hinder, delay or defraud her in the enforcement of her right, such transfer is void. She comes within the classification of "other persons" mentioned in section 2458 of the Code (1904), who are protected against being defrauded by such transfer, of "what they are or may be entitled to." It is not necessary that she should be a creditor in a technical sense.

This conclusion accords with *Goff* v. *Goff,* 60 W. Va. 9, 53 S. E. 769, 9 Ann. Cas. 1083, and with expressions of this court in *Waller* v. *Armstead,* 2 Leigh (29 Va.) 11, 21 Am. Dec. 594, and *Gregory* v. *Winston,* 23 Gratt. (64 Va.) 102.

[6]    The bill in this cause, which was filed August 2, 1916, after setting out the facts, prayed for a divorce, and that W. A. and J. N. Crowder be enjoined from disposing of the property, or paying the notes given therefor to W. Scott Crowder, or any one else, and also for suit money, counsel fees, alimony and permanent support for the complainant and their child.    The bill also prayed for general relief.    An injunction was granted in accordance with the prayer of the bill on August 4, 1916, enjoining and restraining W. A. Crowder and J. N. Crowder from paying to W. Scott Crowder or any other person any sum or sums of money on account of the purchase price of the stock of goods and real estate sold them by W. Scott Crowder.    This injunction was thereafter continued in force by subsequent orders made in the cause.    Depositions for the complainant were taken in December, 1916, and thereafter, and before any claim had been asserted to the notes aforesaid, to-wit, on April 17, 1917, the court entered a decree which, so far as need be here recited, is as follows:    "And without at this time passing on any other question in this case, for the purpose of protecting the rights of both the plaintiff and the defendants, W. A. Crowder and J. N. Crowder, and conserving the amount agreed to be paid by the said defendants to W. Scott Crowder, their co-defendant, it is adjudged, ordered and decreed that said W. A. Crowder and J. N. Crowder do, upon the maturity of the notes (or sooner if they desire), executed by them to W. Scott Crowder, pay the amount of the same to N. S. Turnbull, Jr., who is hereby appointed receiver for the purpose of collecting said notes." Application was made to this court for an appeal from this decree, but it was refused.

In June, 1917, W. A. and J. N. Crowder filed an amended answer to the complainant's bill, in which they set up the fact that they had been notified by Jas. J. McFeeley, of

Denver, Col., that he is the holder for value, in good faith of said notes, which he acquired in due course before maturity, and threatening to sue on them if not paid. The respondents prayed that their answer might be treated as a cross-bill, and that complainant be required to give a bond to save them harmless against the claim of McFeeley, and that then they would gladly pay over the proceeds of said notes to the receiver in the cause. During the same term, the court, without granting the request for an indemnifying bond, decreed that the respondents should within ten days pay over to said receiver the amount represented by said notes. They paid the amount of this decree to the receiver of the court July 10, 1917.

On October 8, 1917, W. A. and J. N. Crowder filed a supplemental answer, in which, amongst other things, they prayed that no disbursements of the sums already paid into the hands of the receiver in the cause be made until the claims of said McFeeley had been passed upon, or some action had been taken in the premises that would protect them from further liability on said notes. On June 20, 1918, the depositions of W. A. Crowder and wife were taken on behalf of the complainant. On June 26, 1918, the decree appealed from was entered, in which it is recited that ample opportunity had been given McFeeley to litigate his rights to the fund in controversy, and it was stated that unless he did come in and litigate his rights in the cause, the court would decree the payment of the money to the complainant. Thereupon he appeared generally, asked that he be admitted as party defendant and permitted to file his petition in the case and to demur and plead to the cross-bill of W. A. and J. N. Crowder. He thereupon filed his petition, and the case was continued to allow him to introduce proof to establish his claim.

W. A. and J. N. Crowder had attempted in a suit which had been brought on one of the notes in the U. S. district

court, and on another in the Circuit Court of Lunenburg county by McFeeley to have Lavonia Ruth Crowder admitted as a party in each case and litigate the respective rights of McFeeley and herself to the proceeds of the notes; but the right to have such interpleader in the federal court was declined, and in the State court had not been passed upon at the time of the rendition of the decree appealed from.

It will be observed from what has already been said that the complainant laid no claim to the notes in controversy or the proceeds thereof unless they were still held and owned as the property of her husband. What was sought by the bill was to set aside the sales of real and personal property made by Scott Crowder, and to subject the property of her husband to the claim asserted in her bill. The notes which had been given for the purchase price of the property represented the agreed value of W. Scott Crowder's interest therein, and she was entirely willing to take its value in lieu of pursuing the property itself. At the time that the money was paid into court, it was intended to protect as far as possible the right not only of the complainant, but of the purchasers themselves, and if this could be done it was entirely proper, but if it could not be done and the transaction was shown to be fraudulent, there was no reason why she could not subject the property itself to the payment of her claim and to have personal decrees against W. A. and J. N. Crowder for such part of the shoes they had purchased as had been disposed of by them. In other words, her claim was against the property, though she was entirely willing to accept the valuation represented by the notes, and if possible to protect the makers of the notes against further payment. The claim of McFeeley, on the other hand, was the personal liability of W. A. and J. N. Crowder on the notes executed by them to W. Scott Crowder. He had no lien of any kind on the property sold, and it was immaterial to him what was the consideration

of the notes, if he took them for value in due course before maturity. The claims of the two parties were entirely separate and distinct, that of the complainant being a right to subject the property itself, and of McFeeley to resort only to the personal liability of the makers of the notes. It was error, therefore, to require McFeeley to come into the suit at all. No disposition of the property which furnished the consideration for the notes could affect the personal liability of the makers thereof.

[7] Appellees, W. A. and J. N. Crowder insist that the trial court erred in overruling their demurrer to the complainant's bill. The refusal of an appeal from this action of the trial court settled that question adversely to the appellees' claim and became the law of the case, and it cannot now be again brought in question in this case. *Steinman* v. *Clinchfield Coal Corp.,* 121 Va. 611, 98 S. E. 684.

[8] Upon satisfactory proof of the participation of W. A. and J. N. Crowder in the fraud of W. Scott Crowder it was competent for the court to have rendered a personal decree against them in favor of the complainant for the amounts of their respective purchases, so that they were not hurt by the decree requiring them to pay said amounts into court.

For the reasons hereinbefore stated, the decree appealed from will be reversed, and as more than three years have elapsed since the desertion alleged in the bill, and the situation of the parties and their rights and interests can probably be better dealt with by the circuit court than by this court, and as the purchase price of the property sold has been paid into the circuit court and is now under its control and it is unnecessary to set aside said sales, the cause will be remanded to the circuit court with directions to grant to the complainant such a divorce as she is entitled to, if there has been no reconciliation with her husband, and decreeing to her, out of the funds under the control of the

court, the payment of such sum or sums of money as to the court shall seem proper for counsel fees, costs and the maintenance and support of herself and her infant. If the proceeds of the sale of the real estate by W. Scott Crowder to J. N. Crowder shall be decreed, in whole or in part, to the complainant, the circuit court shall make such fuither decree as may be proper to bar her contingent right of dower therein. The decree shall also dismiss the cause as to the defendant, J. J. McFeeley, without prejudice to pursue whatever rights and remedies he may have against W. A. Crowder and J. N. Crowder, respectively.

*Reversed and remanded.*