AMATEUR–WHOLESALE ELECTRONICS, and International Electronics Systems, Inc., Plaintiffs,

v.

R. L. DRAKE COMPANY, Defendant.

No. 77–2149–CIV–ALH.

United States District Court, S. D. Florida, Miami Division.

June 3, 1981.

Meyers, Kaplan, Levinson & Kenin by Thomas R. Spencer, Jr., Miami, Fla., for plaintiffs.

Shutts & Bowen by Eric B. Meyers, Miami, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER

### FINDINGS OF FACT

HASTINGS, District Judge.

Defendant, R. L. Drake Company (hereinafter sometimes referred to as "Drake Company"), has moved to dismiss this action against it for improper venue. Defendant contends that venue is improper in this district under Section 12 of the Clayton Act, 15 U.S.C.A. § 22, since it has not "transacted business" in the Southern District of Florida or the State of Florida. Defendant's motion for dismissal is supported by the affidavit of Peter W. Drake, President of Drake Company.

Plaintiff, Amateur-Wholesale Electronics, Inc., (hereinafter referred to as "Amateur"), is a Florida corporation engaged in selling and distributing amateur radio equipment in interstate commerce to retail purchasers throughout the United States. Plaintiff, International Electronics Systems, Inc. (hereinafter referred to as "International"), is a Florida corporation that handles all bookkeeping and sales recordkeeping together with shipping of amateur radio equipment for the plaintiff, Amateur. The principal place of business of both plaintiffs is Miami, Dade County, Florida. The defendant, an Ohio corporation having its principal place of business in that State, manufactures and sells amateur radio equipment to dealers located throughout the United States, including Florida.

The complaint alleges violations of the antitrust laws, notably the Sherman Anti-Trust Act, c. 647, 15 U.S.C.A. §§ 1–7 (1890), as amended, the Federal Trade Commission Act, c. 311, 15 U.S.C.A. §§ 41–51 (1914), and the Robinson-Patman Act, c. 592, § 1, 15 U.S.C.A. § 13(a) (1936). Briefly, plaintiffs allege damage to their property and business as a result of a conspiracy between Drake Company and certain other dealers and distributors of amateur radio equipment to fix the price of the equipment and to restrain trade in interstate commerce for such equipment. Plaintiffs further allege that defendant unlawfully discriminated against them by refusing to sell or ship merchandise to plaintiffs since 1972, while continuing to do business with dealers who were of the same class and maintained operations similar to that of the plaintiffs.

The defendant in support of the instant motion contends:

(1) Drake Company does not transact business in this District pursuant to the requirements of venue under 15 U.S.C. § 22.

(A) The defendant is not transacting business in this district through local retailers or through the sale of its equipment by local retailers, since the defendant merely sells its products to

Florida dealers who have no nexus with defendant other than through such purchases.

(B) Drake Company was not transacting business in this district at the time the cause of action accrued (commencement of the alleged conspiracy) or at the time this suit was commenced.

The plaintiffs in opposition to the instant motion contend:

(1) Venue is proper in the Southern District of Florida under 15 U.S.C.A. § 22, since Drake Company transacted business in this district.

(A) Defendant is "transacting business" in this district through local retailers who purchase and distribute defendant's equipment throughout the State of Florida.

## DISCUSSION

## VENUE UNDER ANTITRUST STATUTES

Venue in private antitrust actions against a corporate defendant is governed by the special venue provision of Section 12 of the Clayton Act, c. 323, 15 U.S.C.A. § 22 (1914) (hereinafter referred to as 15 U.S.C.A. § 22):

Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found. Oct. 15, 1914, c. 323 § 12, 38 Stat. 736.

■ A corporation is said to be an inhabitant of the state of its incorporation. *Aro Manufacturing Co. v. Body Research Corp.*, 352 F.2d 400 (1st Cir. 1965), *cert. denied*, 383 U.S. 947, 86 S.Ct. 1199, 16 L.Ed.2d 210 (1966); *Grappone, Inc. v. Subaru of America, Inc.*, 403 F.Supp. 123 (D.N.H.1975), *Fox-Keller, Inc. v. Toyota Motor Sales, U. S. A., Inc.*, 338 F.Supp. 812 (E.D.Pa.1972). Drake Company is not incorporated in Florida and, therefore, not an inhabitant of this State.

■ The term "found" as used in 15 U.S.C.A. § 12 connotes presence and activities which are "continuous and local." *Stern Fish Co. v. Century Seafoods, Inc.*, 254 F.Supp. 151, 153 (E.D.Pa.1966); *Fox-Keller, Inc. v. Toyota Motor Sales, U. S. A. Inc.* In order to be "found" within this district, a corporation must be present by "its officers and agents carrying on the business of the corporation. *Aro Manufacturing Co. v. Automobile Body Research Corp.* Drake Company does not have any officers or agents within this district who engage in "continuous local activity"; therefore, it logically follows that Drake Company is not "found" in this district.

■ The tests which determine whether a corporation is "found" within a district are more stringent than those which are used to determine whether it "transacts business." The phrase "transacts business" provides "a much broader meaning for establishing venue" than the word "found". *Grappone, Inc. v. Subaru of America, Inc.*, at 128 *citing United States v. Scophony Corp.*, 333 U.S. 795, 807, 68 S.Ct. 855, 861, 92 L.Ed. 1091 (1948). Thus, the paramount issue at this stage of analysis is whether Drake Company "transacts business" in this district.

■ Under Section 7 of the original Sherman Anti-Trust Act of 1890, a defendant could only be sued in the district in which it "resides or is found." *Grappone, Inc. v. Subaru of America, Inc., citing, People's Tobacco Co. v. Am. Tobacco Co.*, 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587 (1918). Congress, in 1914, enacted the Clayton Anti-Trust Act, which supplemented the former laws against unlawful restraints of monopolies of interstate trade. The term "transacts business" was added by Congress with the clear intention to broaden venue in antitrust cases in order to enlarge the jurisdiction of the various federal district courts and to give an aggrieved plaintiff "the right to bring suit and have it tried in the district where the defendant committed violations of the [Clayton] Act and inflicted the forbidden injuries." *Grappone, Inc. v.*

Subaru of America, Inc., quoting United States v. Nat. City Lines, 334 U.S. 573, 583, 68 S.Ct. 1169, 1175, 92 L.Ed. 1584 (1948); Eastman Kodak Co. v. Southern Photo Co., 273 U.S. 359, 373–374, 47 S.Ct. 400, 403, 71 L.Ed. 684 (1927); United States v. Scophony Corp., 333 U.S. 795, 807, 68 S.Ct. 855, 861, 92 L.Ed. 1091 (1948). To that end, the general test for "transacting business" is whether, viewed in the practical, everyday business concept of carrying on business, the defendant transacts business of a substantial character with the district. United States v. Scophony; Eastman Kodak Co. v. Southern Photo Materials Co. The primary indicator in determining the substantiality of the transactions in the district is to view the continuity of the transactions and their importance to the defendant company, as well as the dollar amount of the transactions. The dollar amount of business transacted in the district should be viewed "objectively from the standpoint of the average businessman rather than from the standpoint of a large corporation, and to view this volume without reference to or comparison with the total volume of business of the corporation." In re Chicken Antitrust Litigation, 407 F.Supp. 1285, 1291 (N.D.Ga.1975) and cases cited therein. The above test is intended to substitute "practical business conceptions for the previous hair splitting legal technicalities." United States v. Scophony Corp., 333 U.S. 795, 808, 68 S.Ct. 855, 862, 92 L.Ed. 1091 (1948); Pacific Car and Foundry Co. v. Pence, 403 F.2d 949, 953 (9th Cir. 1968). "Beyond those general guidelines, the determination, whether a corporation is transacting business within a particular district must ultimately be made on a case-by-case basis, according to the particular facts presented." National Constructors v. National Elec. Contractors, 498 F.Supp. 510 at 525 (D.C.) and cases cited therein.

In assaying the facts, the court should bear in mind that the broadening of the antitrust venue provision "was designed to aid plaintiffs by giving them a wider choice of venues, and thereby to secure a more effective, because more convenient, enforcement of antitrust prohibitions." Grappone,

Inc. v. Subaru of America, Inc. quoting United States v. Nat. City Lines, 334 U.S. 573, 586, 68 S.Ct. 1169, 1176, 92 L.Ed. 1584 (1948). However, the court should also keep in view Congress' unwillingness to extend the plaintiffs' right to choice of venue beyond reasonable limits. In United States v. National City Lines the Supreme Court noted Congress' rejection of bills providing for unlimited choice. It states:

Congress therefore was not indifferent to possibilities of abuse involved in the various proposals for change. Exactly the opposite was true. For the broader proposals were not rejected because they gave the plaintiff the choice. They were rejected because the choice given was too wide, giving plaintiffs the power to bring suit and force trial in districts far removed from the places where the company was incorporated, had its headquarters, or carried on its business.... Congress was not willing to give plaintiff free rein to haul defendant hither and yon at their caprice.... But neither was it willing to allow defendants to hamper or defeat effective enforcement by claiming immunity to suit in a district where by a course of conduct they had violated the Act with the resulting outlawed consequences. 334 U.S. 587, 588, 68 S.Ct. 1177.

■ An analysis of Drake Company's alleged transaction of business in this district, even under the most liberal interpretation of 15 U.S.C.A. § 22, precludes this district from qualifying as a place of proper venue. The affidavit of Peter W. Drake, Jr., President of Drake Company, appended to the defendant's motion for dismissal, establishes that Drake Company has no office or place of business in the State of Florida. It neither owns nor possesses any real estate or property in this State. It has no bank accounts, telephone listing, warehouse, stock of goods, representative or agent for or on its behalf in the State of Florida. In fact, the evidence reveals that the defendant has had no physical contact with this State other than the showing of its products in two trade shows within the State in the last two or three years.

The general standard of law is that isolated and sporadic contacts with the forum state are not sufficient to constitute "transacting business; '[t]he business transacted must be of a substantial character, and it must have some degree of continuity.'" *Grappone, Inc. v. Subaru of America, Inc.*, at 130, *quoting Bruner v. Republic Acceptance Corp.*, 191 F.Supp. 200, 203 (E.D.Ark.1961). The use of two trade shows by Drake Company to display its products in the State of Florida in the last two or three years is not sufficient to constitute the requisite degree of continuous local contact. *Grappone, Inc. v. Subaru of America, Inc.; Javelin Corp. v. Uniroyal, Inc.*, 360 F.Supp. 251 (N.D.Cal.1973).

Plaintiffs rely primarily on the presence of five dealers in the State of Florida who purchase and distribute the defendant's products. Plaintiffs assert that the activities of the dealers, as agents of the defendant corporation, constitute the necessary "transaction of business."

In trying to determine whether venue is proper in an antitrust suit where the defendant corporation does not have direct contact with the district, but allegedly acts by and through local agents, "the question is not one of corporate structure, but rather corporate control." *Grappone, Inc. v. Subaru of America, Inc.* at 131. Thus, in order to determine whether retailers and distributors act as local agents of foreign corporations for purposes of venue under 15 U.S.C.A. § 22, the courts rely principally on the amount of control the foreign corporation exercises over the business affairs and method of operation of the local entities. The factor of control was dispositive of the case *Grappone, Inc.*

In *Grappone, Inc.* a retail dealer brought suit against the exclusive importer of Subarus and a regional distributor. The defendant importer's products were sold to the defendant regional distributor, who in turn, distributed the cars to local retail dealers that it selected to sell directly to the public. Although it was established that the defendant corporation had no ownership interest in the regional distributor, the court still found that the defendant corporation "transacted business" in the state as a consequence of the distributors activities with the local retailers. In so doing, the court stated:

It is axiomatic that Importer, as the exclusive importer of Subarus into the United States, has optimal control over all wholesale and retail dealers. If Distributor does not follow Importer's advice or suggestions, whether they be implicit or explicit, then it is subject to Importer's power of revocation. The quintessence of control is contained in paragraph 12(f) of the Distributorship Agreement, entered into between Importer and Distributor, which provides that Importer shall have sufficient cause to bring about immediate termination of the agreement as a consequence of "[a]ny disagreement or personal difficulties in the management of Distributor which in Importer's opinion may adversely affect the conduct of Distributor's business." (Pl.'s Ex. 2 at 12.) This provision is so broadly worded that it could justify almost any reason for termination.

Importer has not entered into any contracts with New Hampshire dealers; Distributor is the corporate entity that corresponds directly with the local retail dealers. But this corporate pyramiding cannot obfuscate the obvious; the retail dealers are the backbone of Importer's business, for it is they who sell cars to the public. The selling of products "is the most important part of a business. There can be a substitute for every department of a business but sales." *Sunbury Wire [Rope Mfg. Co. v. U. S. Steel Corp.]*, supra, 129 F.Supp. [425] at 427. It is for this reason that Importer has established standards which prospective dealers must meet. The contract entered into between Importer and Distributor is replete with obligations that relate to the promotional activities of the parties. The disposal of Importer's products "not only requires reliable distributors and dealers, but frequent oversight and contact with their work, as well as advice and assistance

from the manufacturer's office and its designers, engineers, and sales managers." *Jeffrey-Nichols [Motor Co. v. Hupp Motor Car Corp.]* supra, 46 F.2d [623] at 625; *K. J. Schwartzbaum, Inc. v. Evans, Inc.*, 44 F.R.D. 589, 592 (S.D.N.Y. 1968). Based on the foregoing, I find that Importer has sufficient control over the essential business activities of Distributor and that it, therefore, "transacts business" within this district. Venue is proper.

403 F.Supp. at 132–133.

■ Consistent with the above standard, the courts have uniformly held that even where a foreign corporation has no office within the district and has failed to transact business within the state, but its wholly-owned subsidiary does business within the state and has common officers with the parent corporation, there is insufficient business to subject the foreign corporation to venue in the district under 15 U.S.C.A. § 22. In order for a wholly-owned subsidiary's local contacts to be transferred to its parent, it must be shown that the parent corporation in fact controls and manages the day-to-day business operations of its subsidiary. *Grappone, Inc.; Weinstein v. Norman M. Morris Corp.*, 432 F.Supp. 337 (E.D.Mich.1977); *Hayashi v. Sunshine Garden Products, Inc.*, 285 F.Supp. 632 (W.D.Wash.1967), aff'd 396 F.2d 13 (9th Cir. 1968); *Hoffman Motors Corp. v. Alfa Romeo S.P.A.*, 244 F.Supp. 70 (S.D.N.Y.1965).

■ Although alleging that the five retailers located in Florida are agents of Drake Company, plaintiffs, in this case, have failed to proffer any evidence demonstrating control over the five retailers by the defendant corporation. Instead, the facts indicate that the five retailers located in Florida are separately owned entities that merely purchase for resale products from Drake Company. Plaintiffs have failed to demonstrate that the management and day-to-day business operations of the five retailers is controlled by Drake Company. Without such a showing the plaintiffs' allegation, that the local activities of the five Florida retailers should be imputed to Drake Company for venue purposes, cannot stand. And, it is a well established principal of law that the burden is on the plaintiffs to prove proper venue. *Grappone, Inc.; Aro Manufacturing Co.*

In order for a wholly-owned subsidiary's local activities to be transferred to the parent corporation, the plaintiff must establish that the subsidiary is essentially the alter ego or the agent of the parent corporation which dictates and controls the daily business affairs of such subsidiary. It follows, a fortiori, that the same showing of control must be made in order to transfer the local activities of separately owned retailers to a foreign corporation. In this case, plaintiffs have failed to meet this burden. Absent a showing of sufficient control over the essential business activities of the local retailers, I find that Drake Company does not "transact business" within this district.[1]

Equally dispositive of this case is the time in which the alleged "transactions of business" by Drake Company in this district were alleged to have occurred. As noted by the Ninth Circuit in *Eastland Construction Co.*, the statutory phrase "transacts business" is written in the present tense, not in the past. The result is that there is a division in the decisions as to whether the phrase refers to the time when suit is filed, see, e. g. *Sunbury Wire Rope Mfg. Co. v. United States Steel Corp.*, 230 F.2d 511 (3rd Cir. 1956); *C.C.P. Corp. v. Wynn Oil Co.*, 354 F.Supp. 1275 (N.D.Ill.1973); *Philadelphia v. Morton Salt Co.*, 248 F.Supp. 506

1. The facts of this case suggest a more persuasive argument for the plaintiffs. Perhaps, plaintiffs would have met with greater success had they relied on the amount of direct sale of products by the Drake Company into this district and into the State of Florida. The courts focus would then have been on the continuity of the transactions and their importance to the defendant, as well as the aggregate dollar amount of the sales to the Florida retailers, as opposed to the unsupported control over the local retailers by the defendant. However, the plaintiffs have failed to raise this argument, and consequently have failed to proffer any evidence in support thereof.

(E.D.Pa.1965); *Commonwealth Edison Co. v. Federal Pacific Electric Co.*, 208 F.Supp. 936 (N.D.Ill.1962), or when the cause of action accrued, *see, e. g. Eastland Const. Co. v. Keasbey & Mattison Co.*, 358 F.2d 777 (9th Cir. 1966); *Farmers Elevator Mutual Ins. Co. v. Carl J. Austad & Sons, Inc.*, 343 F.2d 7 (8th Cir. 1965); *National Constructors v. National Electric Contractors*, 498 F.Supp. 510 (D.C.1980); *Fulton Co. v. Beaird-Poulan, Inc.*, 54 F.R.D. 604 (N.D. Miss.1972).

As I view the relevant facts, the result in the present case would be the same whichever line of authority is followed. The complaint alleges that the conspiracy was entered into around August of 1973, so that venue under 15 U.S.C. § 22 would be improper absent a showing that Drake Company was transacting business in this district either at that time or thereafter. *Learning Systems, Inc. v. Levin*, 351 F.Supp. 532, 534 (E.D.Mo.1972). Plaintiff specifically alleges that its last purchase from Drake Company was in October, 1972, but more importantly, further alleges that Drake Company refused "to deal with [p]laintiffs in any way." *Pl's Complaint, Count II* para. 9 at 3.

The bare allegations contained in the complaint make it readily apparent that insofar as its relationship to plaintiff is concerned, Drake Company terminated transacting business in this district in October of 1972. The facts do not disclose any further transaction of business in this district by the defendant corporation after that date. In view of the fact that plaintiffs' cause of action could not have accrued until August of 1973 or in any event more than nine (9) months after Drake Company ceased transacting business in this district, "there is not here present a situation where an alleged wrongdoer withdraws from the transaction of business in a state after it has inflicted an injury." *Learning Systems, Inc.* at 535. Therefore, this Court holds that plaintiff may not sustain venue on the theory that Drake Company "transacted business" in this district, either as of the time of the accrual of the alleged claim or at the time the suit was filed, on July 8, 1977.

Venue, not having been proved to exist with regard to the Southern District of Florida, this court is left with the choice of either dismissing the action against the defendant corporation or transferring to a district wherein venue will doubtlessly lie. 28 U.S.C.A. § 1406(a).

And now, to wit, this 3rd day of June, A.D. 1981, it is hereby ordered that plaintiffs make application to this court within twenty (20) days to have their actions against Drake Company transferred to a specifically named federal judicial district wherein venue can be demonstrated to exist as against said defendant to the satisfaction of the court. Upon failure to make such application, the Motion of defendant to Dismiss will be granted.

And it is so ordered.