**REYNOLDS METALS COMPANY, Plaintiff,**

v.

**The COLUMBIA GAS SYSTEM, INC., Commonwealth Gas Services, Inc., Columbia Gas Pipeline Corporation, Columbia Gas Transmission Corporation, Columbia Gulf Transmission Company, Defendants.**

Civ. A. No. 87–0446–R.

United States District Court,
E.D. Virginia,
Richmond Division.

Sept. 23, 1987.

Thomas G. Slater, R. Noel Clinard, Michael J. Lockerby, Hunton & Williams, Richmond, Va., William F. Young, James F. Bowe, Jr., Hunton & Williams, Washington, D.C., for plaintiff.

Dana D. McDaniel, John S. Graham, III, Ann Adams Webster, John D. Epps, Browder, Russell, Morris & Butcher, P.C., Richmond, Va., John E. Beerbower, Cravath, Swaine & Moore, New York City, for defendants.

## MEMORANDUM

MERHIGE, District Judge.

This matter comes before the Court on defendants', The Columbia Gas System, Inc. ("System"), and Columbia Gulf Transmission Company ("Columbia Gulf"), motion to dismiss plaintiff's Complaint as to each of them. Having been fully briefed, the matter is now ripe for disposition.

*Procedural Background*

This action was brought by plaintiff Reynolds Metals Company ("Reynolds") on June 26, 1987 alleging that defendants System, Columbia Gulf, Commonwealth Gas Services, Inc. ("Services"), Commonwealth Gas Pipeline Corporation ("Pipeline"), and Columbia Gas Transmission Corporation ("TCo") (collectively, "the Columbia System Companies") abused their monopoly power over the transportation of natural gas in violation of the Sherman Act, and the Virginia Antitrust Act. System and Columbia Gulf filed the instant motion to dismiss on July 21, 1987, and filed answers on August 3, 1987. Plaintiff filed its response to defendants' motion on August 4, 1987, and System and Columbia Gulf filed their reply memorandum on August 18, 1987.

Jurisdiction over plaintiff's claims pursuant to the Sherman and Clayton Acts is premised on 28 U.S.C. §§ 1331 and 1337. Jurisdiction over plaintiff's state law claim is premised on the Court's pendent jurisdiction.

*Facts*

Plaintiff alleges that it is a major producer of aluminum and fabricated aluminum products, with production facilities including four plants in Chesterfield County, Virginia and a plant in the City of Richmond (hereafter referred together as "Reynolds' Plants"). These plants have used substantial quantities of natural gas in their production processes, totalling an average of approximately 4,173 thousand cubic feet per day. All natural gas purchased by Reynolds for use at Reynolds' plants must be transported by one or more of the defendants.

Plaintiff further alleges that System, a Delaware corporation with its principal place of business in Wilmington, Delaware, is the parent company to a number of operating affiliates and subsidiaries. Among these affiliates and subsidiaries are the other defendants. Columbia Gulf is a Delaware corporation with its principal place of business in Houston, Texas. Columbia Gulf operates an interstate gas transmission line which stretches from offshore Louisiana to Kentucky.

Plaintiff alleges that Pipeline and Services are Virginia corporations with their principal place of business in Richmond, Virginia. TCo is a Delaware corporation with its principal place of business in Charleston, West Virginia. TCo operates an 18,800 mile long pipeline network which sells gas at wholesale and transports gas to local distribution companies in several states, including Virginia. System, together with its affiliates and subsidiaries, is a vertically-integrated entity involved in exploration for, production, purchasing, transportation, and sale of natural gas. Among other activities of system, its affiliates and subsidiaries, Services purchases gas from Pipeline, Pipeline purchases gas from TCo, and TCo purchases gas from Columbia Gulf.

Plaintiff alleges that from approximately July, 1983, to July, 1986, it has been unable to obtain from the Columbia System Companies transportation of natural gas that it otherwise would have been able to acquire from independent sellers. The only exception to the Columbia System Companies' policy of not providing transportation has been with respect to gas transported under a "special marketing program" ("Columbia SMP") offered by TCo and Columbia Gulf.

Based upon these factual allegations, plaintiff alleged six counts in its complaint. Counts One, Two, Three and Four allege that the Columbia System Companies used or attempted to use their economic power over the sale and transportation of natural gas in violation of the Sherman Act, 15 U.S.C. §§ 1 and 2. Counts Five and Six allege that the Columbia System Companies acted in violation of the Virginia Antitrust Act, Va.Code §§ 59.1–9.5 and 59.1–9.6.

Plaintiff seeks threefold the damages it has allegedly sustained, an injunction preventing further violation of the Sherman and Virginia Antitrust Acts, and costs and reasonable attorney's fees.

*The Merits*

In their motion to dismiss, defendants System and Columbia Gulf contend that venue as to these defendants is improper,

that personal jurisdiction is lacking and that plaintiff has failed to state a claim against System or Columbia Gulf upon which relief can be granted. Therefore, plaintiff's complaint as it relates to these defendants is subject to dismissal under Rule 12(b)(2), (3) and (6).

## I. *Venue and Jurisdiction*

A single analysis resolves the issues of personal jurisdiction and proper venue under § 12 of the Clayton Act. *Sportmart, Inc. v. Frisch*, 537 F.Supp. 1254, 1256–57 (N.D.Ill.1982). The same general due process principles provide the standard for making both venue and personal jurisdiction determinations. *Id.* Once venue is established, the Court may properly obtain personal jurisdiction over the defendant through extra-territorial service of process. *Garshman v. Universal Resources Holding, Inc.*, 641 F.Supp. 1359, 1363–64 (D.N.J. 1986), *aff'd on other grounds*, 824 F.2d 223 (3d Cir.1987); *Cascade Steel Rolling Mills, Inc. v. Itoh and Co., (America) Inc.*, 499 F.Supp. 829, 835 (D.Or.1980). Therefore, the threshold inquiry is venue.

Section 12 of the Clayton Act, 15 U.S.C. § 22, provides the relevant venue standard, stating:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant or wherever it may be found.

Venue is proper under this standard if System and Columbia Gulf are "found or transact business" in Virginia.

Neither System nor Columbia Gulf is "found" in Virginia under the allegations stated in plaintiff's complaint. To be "found" in a district for the purposes of the venue section of the Clayton Act, "a corporation must have duly authorized 'officers and agents carrying on the business of the corporation' within the district." *Athletes Foot of Delaware, Inc. v. Ralph Libonati Co.*, 445 F.Supp. 35, 42 (D.Del.

1977) (quoting *Eastman Kodak Co. of New York v. Southern Photo Materials Co.*, 273 U.S. 359, 371, 47 S.Ct. 400, 402–03, 71 L.Ed. 684 (1927)). "[That] business must be such as to warrant the inference that [the corporation] is engaged in continuous local activity." *Id.* Plaintiff's Complaint contains no allegations of this nature regarding System or Columbia Gulf. Furthermore, plaintiff has not disputed the affidavits of Hart T. Mankin, Assistant Secretary of System, and William C. Spence, Secretary of Columbia Gulf, which state that system and Columbia Gulf are not now, nor have they ever been, licensed, registered or qualified to conduct or transact business in Virginia. (Mankin Aff. ¶ 4; Spence Aff. ¶ 4.) System and Columbia Gulf own no real property in Virginia; do not have any officer, agent, or employee acting on their behalf in Virginia; and do not have any physical presence there by way of office, postal address, telephone or otherwise. (Mankin Aff. ¶ 5; Spence Aff. ¶ 5.). Accordingly, neither of these defendants may be considered "found" in Virginia under the Clayton Act.

Although a corporation is not found in the district, venue may nonetheless be proper under § 12 of the Clayton Act if the corporation transacts business in the district. 15 U.S.C. § 22. In *United States v. Scophony Corp.*, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948), the Supreme Court held that the "transacts business" language of the Clayton Act enlarged the more limited "found" standard of the Sherman Act. With the enactment of the Clayton Act, the practical, everyday business or commercial concept of doing business or carrying on business of any substantial character became the test of venue. *Id.* at 807, 68 S.Ct. at 861–62.

Plaintiff contends that the existence of contracts between Columbia Gulf and Reynolds, specifically a 1985 Special Marketing Program ("SMP") contract and two transportation contracts (Pl. Mem. Appendix Exhibits B, C. D.), indicate that Columbia Gulf was indeed transacting business in Virginia. Plaintiff cites *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 105 S.Ct. 2174, 2182–83, 85 L.Ed.2d 528 (1985)

748 and a black bar

for the principle that contractual relationships are sufficient to satisfy the identical requirements of *in personam* jurisdiction, quoting:

> With respect to interstate contractual obligations, we have emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.

(citations omitted). However, the Court in that case limited the statement by holding "if the question is whether an individual contract with an out-of-state party *alone* can automatically establish sufficient minimum contracts in the other party's home forum, we believe the answer clearly is that it is not." *Id.* at 478, 105 S.Ct. at 2185.

■ *Scophony* clearly establishes that the proper approach to determining issues of venue under the federal antitrust laws is to look at the entire relationship between the party and the forum state. 333 U.S. at 802–810, 68 S.Ct. at 859–63. The three contracts to which Columbia Gulf and the plaintiff are parties are the only connections plaintiff has alleged between Columbia Gulf and the Commonwealth of Virginia. These contracts, to which Columbia Gulf is only one of several parties, fail to illustrate the meaningful involvement in the forum state necessary to meet the *Scophony* standard of carrying on business of any substantial character. Plaintiff dealt only with representatives of TCo, Services, and Pipeline in negotiating these contracts. Affidavit of Robert A. Frondorf, Utility Specialist for Reynolds, ¶¶ 3–5. There is no allegation that any performance of these contracts on the part of Columbia Gulf constituted business activity in Virginia. Plaintiff has failed to demonstrate how the contracts show Columbia Gulf to transact business in Virginia in the usual and ordinary sense and has failed to allege any other connection between Columbia Gulf and the state. Therefore, venue is improper with respect to Columbia Gulf.

■ Although plaintiff's complaint makes no allegation that System itself transacts business in Virginia, the plaintiff does allege that System is the parent company of subsidiaries, TCo., Services and Pipeline, which do transact business in the State. Under certain circumstances, the parent company of a wholly-owned subsidiary may be subject to jurisdiction and venue under § 12 of the Clayton Act for the adjudication of antitrust claims in the state in which the subsidiary transacts business. *See, e.g., Call Carl, Inc. v. BP Oil Corp.,* 391 F.Supp. 367 (D.Md.1975). However, complete ownership of a subsidiary found or transacting business in a forum is, alone, insufficient to deem the parent corporation also present within the forum. *King v. Johnson Wax Associates,* 565 F.Supp. 711, 718 (D.Md.1983); *Caribe Trailer Systems v. Puerto Rico Maritime Shipping Authority,* 475 F.Supp. 711, 717–18 (D.D.C.1979), *aff'd,* No. 79–1658 (D.C. Cir.1980) (per curiam), *cert. denied,* 450 U.S. 914, 101 S.Ct. 1355, 67 L.Ed.2d 339 (1981).

■ The essential element required before a court may pierce the corporate veil to reach the foreign parent is control over the conduct of the subsidiary that allegedly violated the antitrust laws. *Caribe Trailer Systems, Inc.,* 475 F.Supp. at 718. *Accord, Garshman v. Universal Resources Holding, Inc.,* 641 F.Supp. at 1364. In evaluating the degree of control needed to find proper venue with a foreign parent under § 12 of the Clayton Act, the Court should examine whether the parent exerts sufficient control over the subsidiary to enable the parent to direct the subsidiary's internal affairs. *See King,* 565 F.Supp. at 718.

Plaintiff contends that the proper test of venue in cases involving a foreign parent corporation is "the *ability* of the parent to influence major decisions of the subsidiary which led or could lead to violations of the antitrust laws." *Call Carl, Inc.,* 391 F.Supp. at 371 (citing *Flank Oil Co. v. Continental Oil Co.,* 277 F.Supp. 357, 365 (D.Colo.1967)) (emphasis added). Plaintiff argues that by virtue of its ownership of the voting stock of its subsidiaries, System

clearly has the ability to control TCo, Services, and Pipeline. Accordingly, plaintiff argues, venue as to System is proper if *Call Carl* and *Flank Oil* are followed.

Taken out of context, the quotation from *Call Carl, supra,* indeed appears to indicate that venue is proper when a parent merely has the ability to control, rather than actually exercises such control. However, the case as a whole indicates that the real issue the court was addressing was whether the actual control which was exerted by the parent served to influence the specific decisions of the subsidiary relevant to antitrust violations. The Court in *Call Carl* acted in accord with the clear majority of cases by holding that "to pierce the corporate veil in a case where ... there is complete stock ownership of the subsidiary by the parent, it is necessary to find some evidence of conscious control by the parent of a major aspect of the subsidiary's operation." 391 F.Supp. 374.

Similarly, *Flank Oil* must be construed as holding that the "ability to control" which enables a court to pierce the corporate veil is the ability, arising from actual conscious control of the subsidiary, to influence specific actions related to the alleged antitrust violation. The Court in *Flank Oil* did not adopt the idea that a single factor, such as ownership, can create control for venue purposes. Rather, the court looked to the realities of the relationship, and found venue proper only after finding that the parent maintained "contact directors" and an "investment advisory committee," enabling the parent to determine policy questions important to the subsidiary's operations. 277 F.Supp. at 363–65.

The majority of cases have been more explicit than *Flank Oil* and *Call Carl* in requiring clear control by the parent before finding venue. In *San Antonio Telephone Co. Inc. v. American Telephone & Telegraph Co.,* 499 F.2d 349 (5th Cir.1974), the Court held that while the parent dictated the general policies of its subsidiaries, daily business affairs were the responsibility of the subsidiaries, making venue as to the parent improper. *See also, Amateur-Wholesale Electronics v. R.L. Brake Co.,*

515 F.Supp. 580, 586 (S.D.Fla.1981) ("it must be shown that the parent company in fact controls and manages the day-to-day business operations of its subsidiary"); *D.L. Auld Co. v. Park Electrochemical Corp.,* 553 F.Supp. 804, 807 (E.D.N.Y.1982) ("actual domination of subsidiary must be established").

In *Garshman,* 641 F.Supp. 1359, the United States District Court for the District of New Jersey examined whether this same defendant, System, controlled TCo to the extent necessary to find venue under § 12 proper in New Jersey. The court concluded that venue was not appropriate as to System, holding that while System may exercise parental oversight of a subsidiary's affairs, it does not control TCo for the purposes of the venue section of the Clayton Act.

■ Plaintiff's contention, that System by virtue of its controlling interest in the voting stock of its subsidiaries clearly has the ability to control them, proves too much. Under this theory, courts would pierce the corporate veil of all parents with wholly owned subsidiaries, as every parent would have the inherent ability to control its subsidiary. A standard which would require the courts per se to ignore corporate barriers for venue purposes has been plainly rejected by the case law. *E.g., Call Carl, Inc. v. BP Oil Corp.,* 391 F.Supp. at 371; *Amateur-Wholesale Electronics v. R.L. Brake Co.,* 515 F.Supp. at 586. The purpose of the control inquiry is to determine whether the ownership of the subsidiary is a mere investment or is an alternative means of transacting business by the parent corporation. *Caribe Trailer Systems, Inc. v. Puerto Rico Maritime Shipping Authority,* 475 F.Supp. at 717–18.

■ Plaintiff has failed to make allegations which might tend to indicate that System controls its subsidiaries to the degree necessary to make venue proper. Plaintiff's allegations that System wholly owns subsidiaries that are found or transact business in Virginia; that officers of System have served as directors of TCo, Columbia Gulf, Pipeline and Services; and that System and its subsidiaries are part of

an integrated natural gas system are insufficient as a matter of law to attribute the subsidiaries' transaction of business in Virginia to System. Plaintiff has failed to meet its burden of pleading facts which establish that System transacts business in Virginia. *See Garshman v. Universal Resources Holding, Inc.*, 641 F.Supp. at 1363. Therefore, the Court concludes that venue as to System as well as to Columbia Gulf is not appropriate in this district.

## II. *12(b)(6) Motion:*

In considering System's and Columbia Gulf's motion to dismiss under Fed. R.Civ.P. 12(b)(6), the Court must accept the complaint's factual allegations to be true and give the plaintiff the benefit of all reasonable inferences. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 444 (3d Cir.1977). Furthermore, dismissals for failure to state a claim, particularly in antitrust actions, should be granted very sparingly and only if it appears that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976). Nevertheless, the courts will require some reasonable particularity in pleading violations of the federal antitrust laws. *Sutliff, Inc. v. Donovan Co.*, 727 F.2d 648, 654 (7th Cir.1984). *See also, Lombard's Inc. v. Prince Manufacturing, Inc.*, 753 F.2d 974, 975 (11th Cir.1985); *Dunn & Mavis, Inc. v. Nu-Car Driveway, Inc.*, 691 F.2d 241, 243–44 (6th Cir.1982). Allegations which are merely bare legal conclusions will not state a claim under the antitrust laws. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984). A complaint will not withstand a 12(b)(6) motion when facts which fail to outline a violation of the Sherman Act are presented in the language of antitrust law. *Id.*

Despite plaintiff's attempts to include System within the scope of its antitrust claim by referring to all defendants as "Columbia System Companies," there are no facts pleaded in the complaint which do so. The claims plaintiff presents in its complaint are based upon agreements to which System was not a party, and upon actions allegedly taken by TCo, Columbia Gulf, Services and Pipeline. Plaintiff's allegations connecting System to the alleged anticompetitive behavior are simply broad legal conclusions insufficient to implicate this defendant in the conduct upon which the claim is based.

Plaintiff's complaint apparently seeks to impute liability to System based upon the alleged wrongful activities of its subsidiaries. However, a corporation generally will be recognized as a separate entity. *Dewitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 683 (4th Cir.1976); *West v. Costen*, 558 F.Supp. 564 (W.D.Va.1983). Although the courts may pierce the corporate veil to reach the parent, such power is to be exercised reluctantly, and the burden of establishing a basis for such action rests on the party asserting the claim. *DeWitt Truck Brokers*, 540 F.2d at 683.

The only allegation plaintiff has made concerning System's relation to anticompetitive behavior is that System is the parent corporation of the other defendants. However, ownership alone is insufficient to disregard the corporate identity. *Brown v. Margrande Compania Naviera, S.A.*, 281 F.Supp. 1004, 1005–07 (E.D.Va.1968). *See also, In re County Green Limited Partnership*, 604 F.2d 289, 292 (4th Cir.1979) ("overlapping ownership is not a sufficient reason in and of itself to pierce the corporate veil.") As plaintiff has made no allegations beyond ownership, the actions of the subsidiaries will not be imputed to System. Therefore, plaintiff's complaint has failed to state a claim against System for which relief may be granted, and dismissal is proper under Rule 12(b)(6).

In its only reference to any specific conduct on the part of Columbia Gulf, plaintiff's complaint states that Columbia Gulf, along with Services, Pipeline, and TCo "denied access to transportation service by engaging in a series of actions, including dilatory processing of Reynolds' requests for transportation, ... changing the terms on which transportation would be provided,

and denying Reynolds access to transportation of gas through Columbia Gulf." Complaint ¶ 45. Although plaintiff does not specifically allege that it ever made any request to Columbia Gulf for transportation, it is reasonable to infer that the alleged denial was in response to such a request.

In *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), the Supreme Court ruled that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Plaintiff has alleged monopoly power on the part of Columbia Gulf over the transportation of natural gas to the Appalachian area, and the willful maintenance of that power. Columbia Gulf contends that it could not in any event transport gas to plaintiff because of a lack of physical proximity. However, the complaint clearly alleges that Columbia Gulf denied plaintiff access to transportation of gas through Columbia Gulf's pipelines, and that this denial prevented Reynolds from obtaining natural gas. Complaint ¶¶ 45–46. Under the deferential treatment afforded to a complaint under a 12(b)(6) motion, *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. at 746, 96 S.Ct. at 1853; *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. at 101–02, this court must deny the 12(b)(6) motion as it pertains to Columbia Gulf.

*Conclusion*

Because, as heretofore stated, venue in Virginia is inappropriate as to both System and Columbia Gulf as well as the fact that movants' 12(b)(6) motion is well taken as to System, the motion to dismiss both System and Columbia Gulf will be granted.

An appropriate order shall issue.