MASCO CONTRACTOR SERVICES EAST, INC., t/a Ayers Insulation, and t/a Davenport Insulation of Tidewater, Inc., Plaintiff,

v.

Jeffrey W. BEALS, Samuel G. Porter, and Tidewater Insulators, LLC, Defendants.

No. 2:03cv422.

United States District Court, E.D. Virginia, Norfolk Division.

Aug. 28, 2003.

Margaret M. Zwisler, Richard A. Ripley, Diane E. Bieri, Howrey, Simon, Arnold & White, LLP, Washington, DC, Kevin E. Martingayle, Stallings and Richardson PC, Virginia Beach, VA, Counsel for Plaintiff.

Allen J. Gordon, Chesapeake, VA, Counsel for Defendants.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on plaintiff's motion to dismiss defendant's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is **GRANTED**.

### I. Factual and Procedural History

Plaintiff Masco Contractor Services East, Inc. ("Masco East") provides insulation installation services in Virginia, North Carolina, and other parts of the United States. Defendant Tidewater Insulators, LLC ("Tidewater"), a Virginia company, is a competitor in the market for residential insulation installation.

The instant litigation began when Masco East filed suit in the Virginia Beach Circuit Court against Tidewater and two of its principal owners, Jeffrey Beals and Samuel Porter. The complaint alleges, inter alia, breach of a confidentiality agreement, misappropriation of confidential and proprietary information, trade secrets, defamation, and tortious interference. Defendants removed the case to this court on June 10, 2003.

Also on June 10, defendant Tidewater filed its answer and a three-count counterclaim, alleging violations of sections 1 and 2 of the Sherman Act and tortious interference with contractual relations and prospective economic advantage under Virginia law.

In short, the counterclaims allege that Masco East and its corporate affiliates, including parent company Masco Corporation, have used a seventy-five percent share of the residential insulation installation market to pressure insulation suppliers into exclusive agreements to sell only to Masco. In addition, the counterclaims allege that Masco East has "on occasion" dropped bids below its cost and misled consumers into believing that they are receiving competitive bids when they are really receiving bids only from various entities owned by Masco East. The counterclaims do not allege any specific occurrences of any conduct.

On July 2, Masco East filed a Motion to Dismiss the counter-claims. The motion has been fully briefed by both parties. Tidewater has not sought leave to amend its counterclaim.

### II. Standard of Review

Dismissal under Rule 12(b)(6) is proper if the allegations in the complaint fail to state a claim upon which relief can be granted. When reviewing a Rule 12(b)(6) motion, the court must assume that the claimant can prove the facts as alleged. *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). It is well established that a complaint should not be dismissed for failure to state a claim under Rule 12(b)(6) unless it appears beyond all doubt that the plaintiff could not recover under any set of facts which could be proved. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Federal Rule of Civil Procedure 8(a)(2) requires only that a claimant make "a short and plain statement of the claim showing that the pleader is entitled to relief." A claimant is not required to

plead his claim with particularity unless she is stating a claim for fraud or mistake. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

The liberal pleading requirements of the Federal Rules do not, however, relieve claimants of the burden of properly pleading facts which, if proven, would establish all elements that make up the theory for relief. *Dickson v. Microsoft Corp.*, 309 F.3d 193, 201 (4th Cir.2002). A court cannot properly assume that a claimant can prove facts that have not been alleged in the complaint. "The inclusion of conclusory legal terms ... does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint do not support the legal conclusion." *Trigon Ins. Co. v. Columbia Naples Capital, LLC*, 235 F.Supp.2d 495, 500 (E.D.Va. 2002).

In the context of claims under the Sherman Act, dismissals for failure to state a claim "should be granted very sparingly and only if it appears that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Reynolds Metals Co. v. Columbia Gas Sys., Inc.*, 669 F.Supp. 744, 750 (E.D.Va.1987)(citing *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976)). "Nevertheless, the courts will require some reasonable particularity in pleading violations of the federal antitrust laws." *Id.* (citation omitted). Moreover, "the allegations must be stated in terms that are neither vague nor conclusory." *Estate Const. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 220–21 (4th Cir.1994). A cross-complaint "will not withstand a 12(b)(6) motion when facts which fail to outline a violation of the Sherman Act are presented in the language of antitrust law." *Reynolds Metals*, 669 F.Supp. at 750; *see also America On-*

*line, Inc. v. GreatDeals.Net*, 49 F.Supp.2d 851, 857 (E.D.Va.1999).

## III. Analysis

### A. Counterclaims Based on § 1 of the Sherman Act

Count II of Tidewater's counterclaim is entitled "Conspiracy in Restraint of Trade," and purportedly alleges that Masco East violated § 1 of the Sherman Act. To establish a violation of § 1, a claimant must prove: (1) a contract, combination, or conspiracy; that (2) imposed an unreasonable restraint of trade. *Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696, 702 (4th Cir.1991) (en banc).

Tidewater alleges that "Masco East and Masco Corporation and their affiliates and subsidiaries have deliberately entered into an agreement in restraint of trade with the specific intent of achieving monopoly power." Countercl. ¶ 13. In *Copperweld Corp. v. Independence Tube Corp.*, the Supreme Court established that unilateral actions of a single enterprise are not actionable under § 1. 467 U.S. 752, 771, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). Accordingly, a "parent and its wholly owned subsidiary have a complete unity of interest ... and an agreement in Sherman Act terms therefore lacks meaning." *Id.* at 771–72, 104 S.Ct. 2731; *see also Oksanen*, 945 F.2d at 703. In addition, two subsidiaries owned by the same parent are legally incapable of conspiring with each other for purposes of § 1. *Advanced Health–Care Servs., Inc. v. Radford Cmty. Hosp.*, 910 F.2d 139, 146 (4th Cir.1990). As a matter of law, therefore, Tidewater cannot succeed on a § 1 claim based on any alleged interactions among Masco Corporation, Masco East, and/or their subsidiaries or affiliates.

Next, the counterclaim generally alleges that "Masco East has exercised its market

power and coerced manufacturers into agreements to refuse to deal with competitors in Tidewater, Virginia, and elsewhere." Countercl. ¶ 20. Under the heading of "Overview," Tidewater additionally alleges:

That because of MASCO EAST's size, market share, and market dominance, it demands of its suppliers, such as Johns–Manville, Certainteed Corporation, Knauf Fiber Glass, and Owens Corning, that they refrain from selling to MASCO EAST's competitors, and threaten said suppliers that it will cease purchasing from them if they sell direct to TIDE-WATER and other competitors.

Countercl. ¶ 8. These allegations are insufficient to make out a conspiracy claim between Masco East and "suppliers."

 In essence, Tidewater alleges what has come to be known as a "hub-and-spoke" or "rimless wheel" conspiracy. A "rimless wheel" conspiracy, as its name implies, involves a number of contracts between one central actor (in this case, Masco East) and a number of suppliers or purchasers of that central actor. In the Fourth Circuit, in the absence of any allegations of agreements between "spokes," a single "rimless wheel" conspiracy must be evaluated as several individual conspiracies. *Dickson,* 309 F.3d at 203–04. If the complaint fails to allege that any individual vertical conspiracy amounts to an unreasonable restraint on trade, then the court should dismiss the claim under Rule 12(b)(6). *See id.* at 211 ("[E]ach [relationship] must be treated as a separate conspiracy, and only acts taken in furtherance of that alleged conspiracy are appropriate-

ly considered in determining the adverse effects of the claimed restraints on trade, not acts of one conspirator taken in furtherance of other possible, distinct conspiracies.")

*Dickson* affirmed the district court's dismissal of § 1 and § 2 conspiracy claims alleging a conspiracy between Microsoft Corporation and Compaq Computers as well as one between Microsoft and Dell Computers because the amended complaint failed to allege that either Compaq or Dell held a market share that was significant enough to create an anticompetitive effect. 309 F.3d at 211. The Fourth Circuit held that "[w]ithout alleging facts demonstrating Compaq's or Dell's power or share in the PC market," the plaintiff was unable to make a showing of § 1 or § 2 violation because the complaint failed to allege that either agreement constituted an unreasonable restraint on trade.[1] *Id.*

The most generous reading of Tidewater's counterclaims would interpret them as alleging a rimless wheel conspiracy between Masco East and suppliers Johns–Manville, Certainteed Corporation, Knauf Fiber Glass, and Owens Corning. However, Tidewater fails to allege that any of these suppliers individually possesses a great enough share of the market that an agreement between Masco East and one of them would have an anticompetitive effect. It therefore has failed to allege facts constituting a cause of action under § 1.

Furthermore, Tidewater does not sufficiently plead a conspiracy between Masco East and any particular manufacturer or supplier. Paragraph 20 of the counter-

---

1. The Fourth Circuit's analysis in *Dickson* applied the "Rule of Reason" to evaluate the potential restraint on trade. 309 F.3d at 205–06. The court determined that "[b]ecause the possibility of anticompetitive effects resulting from *either* licensing agreement is not obvious," the Rule of Reason approach was proper. *Id.* at 205 (emphasis added). The same is true in this case. Based on the cross-complaint, it is not obvious whether any individual exclusivity arrangement would have an anticompetitive effect on interstate commerce because it is unclear whether any of the alleged supplier-conspirators held an appreciable share of the supply market.

claim, even when read in conjunction with paragraph 8, is too vague and conclusory to survive a 12(b)(6) motion to dismiss. Read together, these paragraphs state only that Masco East and "suppliers" entered into "agreements" not to deal with competitors, and then states the legal conclusion that these alleged "agreements" have resulted in less competition.

In the Fourth Circuit, "in order to adequately allege an antitrust conspiracy, the pleader must provide, whenever possible, some details of the time, place and alleged effect of the conspiracy." *Estate Const.*, 14 F.3d at 221. But rather than state facts which could lead to an inference of illegal conduct, Tidewater's claim amounts to a "mere allegation that [Masco and its suppliers] violated the antitrust laws as to a particular plaintiff and commodity." *Id.* Therefore, the facts as alleged by Tidewater in Count II of its counterclaim, even if proven, would not constitute an actionable anticompetitive contract, combination, or conspiracy in violation of § 1. Plaintiff Masco East's motion to dismiss Tidewater's claims based on § 1 of the Sherman Act is **GRANTED**.

## B. Counterclaims Based on § 2 of the Sherman Act

Count I of Tidewater's counterclaim purportedly alleges that Masco East violated § 2 of the Sherman Act. Section two of the Sherman Act provides in relevant part: "Every person who shall monopolize, or attempt to monopolize, any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony." 15 U.S.C. § 2. To state a monopolization claim under § 2 of the Sherman Act, a claimant must allege "(1) that the defendant possesses monopoly power in the relevant market and (2) that the defendant willfully acquired or maintained that pow-

er." *Cavalier Tel., LLC v. Verizon Va., Inc.*, 330 F.3d 176, 183 (4th Cir.2003) (quoting *Eastman Kodak Co. v. Image Technical Svcs., Inc.*, 504 U.S. 451, 481, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992)).

Tidewater makes a number of claims under § 2. Tidewater first alleges that Masco East has successfully monopolized the residential insulation installation market through various exclusionary and anticompetitive behaviors. In the alternative, Tidewater alleges that Masco East has attempted to monopolize the market through these practices. Finally, Tidewater alleges that there have been several conspiracies to monopolize in violation of § 2.

### 1. Monopolization Through Exclusionary and Anticompetitive Conduct

Paragraph 11 of Tidewater's counterclaim states that Masco East has "willfully acquired and maintained monopoly power in the market for residential insulation" in violation of § 2. This allegation states, in wholly conclusory terms, the second element of a § 2 claim. *See Cavalier Tel.*, 330 F.3d at 183. The substance of Tidewater's claim can be found in paragraphs 13 and 17.[2]

Violation of § 2 requires that the defendant acquired or maintains, or attempts to acquire or maintain, a monopoly by engaging in exclusionary conduct "as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell*, 384 U.S. 563, 571, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). In addition, "to be condemned as exclusionary, a monopolist's act must have an 'anticompetitive effect.' That is, it must harm the competitive process and thereby harm consumers." *United States v. Mi-*

**2.** The content of paragraphs 13 and 17 is detailed *infra*.

*crosoft Corp.*, 253 F.3d 34, 58 (D.C.Cir. 2001).

■ Paragraph 13 of Tidewater's counterclaim alleges that Masco East and its affiliates "have further pressured manufacturers and suppliers of insulation product to refrain from dealing with independent contractors, including Tidewater." Additionally, Tidewater states that Masco East has "sent a message throughout the industry" that its suppliers should not deal with Tidewater. Countercl. ¶ 13. Regardless of "pressures" allegedly exerted or "messages" allegedly sent by Masco East, Tidewater could not succeed on its § 2 claim without proof that such pressures had an anticompetitive effect on the market. Tidewater, however, has failed to allege any specific effect on itself or any other competitor of Masco East that would ultimately harm consumers.[3] Therefore, Tidewater has failed to state a claim under a theory of exclusionary behavior.

■ Paragraph 17 alleges that "on occasion, Masco East has dropped its bids below its cost to deny Tidewater certain jobs as part of its predatory pricing scheme to 'snuff out' competition." Tidewater also states that it believes Masco East has made false statements about it. Countercl. ¶ 17. There are two "prerequisites" to establishing a claim under § 2 based on predatory pricing. *Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222–24, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993). First, a claimant must prove that the complained-of prices are below an appropriate

measure of its rival's costs. Second, a claimant must demonstrate that the competitor had a "dangerous probability of recouping its investment in below-cost prices." *Id.* at 224, 113 S.Ct. 2578. Regarding the second requirement, summary disposition of the case as a matter of law is appropriate in circumstances where new entry into the market is easy or the market is highly diffuse and competitive. *Id.*

■ The allegations of paragraph 17 fail to state a claim because Tidewater does not allege any barriers to entry in the residential insulation business. In fact, the counterclaim itself seemingly belies any argument that the installation market lacks competition or is difficult to enter, given that according to the counterclaim at least twenty-five percent of the market is not controlled by Masco East and that there are multiple "competitors" and "independent contractors" who Masco East is allegedly attempting to "snuff out." Countercl. ¶¶ 13, 16, 17. According to the facts as alleged, Masco East's cutting prices below costs would only have the effect of hurting Masco East over time, because there are numerous competitors and no alleged barriers to new competitors entering the market. Therefore, Tidewater has failed to plead the second "prerequisite" to a predatory pricing claim—that the alleged monopolist had a dangerous probability of recouping its investment.

## 2. *Attempt to Monopolize*

■ In paragraph 12, Tidewater alleges that Masco East has "attempted to

---

3. In paragraph 18 (Count I) and again in paragraph 21 (Count II), Tidewater states that as a result of Masco East's alleged conduct, Tidewater has been "injured in its business and property, has suffered a loss of profits in the market, and has sustained damages to its reputation and goodwill." This boilerplate allegation of damages does not save Tidewater's complaint. Like the allegations of Masco

East's alleged violations of § 1 the Sherman Act, these allegations are too vague and conclusory to withstand a motion to dismiss when read in conjunction with the substantive allegations of the counterclaim. Though this general allegation of harm might be sufficient in a case in which somewhat specific facts were alleged that could give rise to these types of damages, that is not the case here.

monopolize the market for residential insulation by engaging in predatory conduct, has engaged in such conduct, and has a dangerous probability of success." To plead an attempt to monopolize under § 2, a claimant must allege facts that establish that the alleged offender engaged in (1) anticompetitive or exclusionary conduct; (2) with specific intent to monopolize; and (3) a dangerous probability of achieving monopoly power. *In re Microsoft Corp. Antitrust Litig.,* 333 F.3d 517, 534 (4th Cir.2003). Again, Tidewater fails to allege any anticompetitive or exclusionary conduct because it does not allege that any competitors of Masco East have been discriminated against by Masco East's suppliers. *See* Part III.B.1., *supra.*

In addition, Tidewater fails to allege the specific intent required to establish an attempt to monopolize claim. In *America Online,* the court held dismissal for failure to allege specific intent was appropriate. 49 F.Supp.2d at 860–61. In that case, the claimant alleged that an internet service provider had "threatened other providers who dealt with [claimant] with lack of access to [America Online] subscribers if they did not stop dealing with [claimants]." *Id.* at 861. The court determined that, even viewing the allegations in a light most favorable to the claimant, specific intent to monopolize was not shown.

The same type of allegations are at issue here and they too are insufficient to survive the motion to dismiss. Tidewater alleges only that Masco East made threats. Despite stating the legal conclusion that this was done with the intent to monopolize (Countercl.¶ 13), no facts are alleged that support this inference. Therefore, Tidewater has failed to allege an attempt to monopolize under § 2.

### 3. *Conspiracy to Monopolize*

Tidewater attempts to allege three separate conspiracy to monopolize claims under § 2. First, Tidewater claims that Masco East conspired with its parent, Masco Corporation, and its subsidiaries and affiliates, to restrain trade with the specific intent of achieving monopoly power. Countercl. ¶ 13. Second, Tidewater claims that Masco East conspired with unspecified suppliers to keep Tidewater out of the market. Countercl. ¶ 13. Third, Tidewater alleges that Masco East conspired with unidentified competitors in the business of installing insulation to rig bids prior to Masco East's acquisition of those companies. Countercl. ¶ 14.

To state a claim for conspiracy to monopolize under § 2, a claimant must allege (1) concerted action between two or more entities, (2) a specific intent to achieve an unlawful monopoly, and (3) commission of an overt act in furtherance of the conspiracy. *Advanced Health–Care,* 910 F.2d at 150. Again, Tidewater has no § 2 conspiracy claim based on allegations made concerning any coordinated activities among Masco Corporation, Masco East, and "subsidiaries and affiliates." Under the principle of *Copperweld,* a § 2 claim based on an alleged intra-enterprise conspiracy fails for the same reason a § 1 claim based on the same allegations does. *See, e.g., Advanced Health–Care,* 910 F.2d at 147; *Oksanen,* 945 F.2d at 710.

Similarly, Tidewater's claim that Masco East conspired with insulation suppliers Johns–Manville, Certainteed Corporation, Knauf Fiber Glass, and Owens Corning is as legally insufficient under § 2 as it was under § 1. *See* Part III.A., *supra.* In *Dickson,* the Court stated that in "those instances where power is a prerequisite to holding an agreement to be an unreasonable restraint of trade under § 1, it would make no sense to hold the same agreement offensive to § 2 without proof of power." 309 F.3d at 211 (citation and internal quotations omitted). Therefore, Tidewater's

§ 2 conspiracy claim based on alleged agreements between Masco East and various suppliers fails to state a claim.

Lastly, Tidewater states that Masco East has "'jumped the gun' on certain mergers and acquisitions and has coordinated prices and bidding" prior to acquisition and merger. Countercl. ¶ 14. The complaint states no other facts in support of this allegation, except to allege conclusorily that customers have been defrauded by this alleged practice. Countercl. ¶ 15. This claim is so vague and conclusory that it cannot withstand a motion to dismiss under the standards set forth in *Estate Construction*, 14 F.3d at 220–21, and *Reynolds Metals*, 669 F.Supp. at 750.

Thus, Tidewater has failed to state any claim under § 2 based on exclusionary and anti-competitive conduct, attempted monopolization, or conspiracy to monopolize. Masco East's motion to dismiss Count I of the counterclaim is therefore **GRANTED**.

### C. *Counterclaims Based on Virginia Law of Tortious Interference*

■■■■ Count III of Tidewater's counterclaim is entitled "Tortious Interference with Contractual and Business Relations and Opportunities." Virginia recognizes the tort of interference with contractual relations. *See Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97 (1985). The Commonwealth also recognizes the tort of interference with prospective economic advantage. *See Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.*, 254 Va. 408, 493 S.E.2d 375 (1997). The court assumes for purposes of ruling on plaintiff's motion to dismiss the counterclaims that Tidewater intended to plead both of these tort causes of action, which, in any event, involve several common elements.

■■■■ To successfully claim tortious interference with contractual relations, a party must prove each of the following elements: (1) the existence of a valid con-

tractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Chaves*, 230 Va. at 120, 335 S.E.2d at 102.

■■■■ To successfully claim tortious interference with prospective economic advantage, a party must (1) demonstrate the existence of a business relationship or expectancy, with a probability of future economic benefit; (2) prove knowledge of the relationship or expectancy; (3) show that it was reasonably certain that absent intentional misconduct, the claimant would have continued in the relationship or realized the expectancy; and (4) show that it suffered damages from the interference. *Commerce Funding Corp. v. Worldwide Sec. Serv. Corp.*, 249 F.3d 204, 213 (4th Cir.2001). In addition, for a tortious interference with economic advantage claim, the claimant must also allege that the adverse party employed "improper methods." *Id.* at 214 (citing *Maximus*, 254 Va. at 414, 493 S.E.2d at 378 (1997)).

■■■■ The purpose of laws against tortious interference is not to protect consumers or the operation of the marketplace generally. Rather, these causes of action provide a legal remedy where a particular party's *specific, existing* contract or business expectancy or opportunity has been interfered with in a tortious manner. Thus, the first element that a party claiming under either of these torts must prove is the existence of some specific contract or relationship. Failure to allege any specific, existing economic interest is fatal to the claim. *See, e.g., Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F.Supp.2d 385, 391 (E.D.Va.2002) ("Because plaintiffs do not

**710**

identify the specific business relationships with which defendant has interfered, plaintiffs' tortious interference claim fails.") Under Virginia law, "the expectancy of remaining in business is too general to support a tortious interference claim." *Levine v. McLeskey*, 881 F.Supp. 1030, 1057 (E.D.Va.1995), *aff'd in part, vacated in part*, 164 F.3d 210 (4th Cir. 1998). "Instead, there must be a particular expectancy which [claimant] is reasonably certain will be realized." *Id.* (internal quotations omitted).

■■■■ Tidewater fails to state a claim for either tortious interference with contractual relations or tortious interference with prospective economic advantage because it does not allege the existence of a valid contractual relationship, business relationship, or business expectancy. The counterclaim makes absolutely no mention of any particular contract. Further, although Tidewater lists the names of various insulation manufacturers and other supplies, it does not allege that Tidewater had any existing business relationship with any of them in particular. Instead, Tidewater claims generally that Masco East uses its market clout to pressure the entire market into dealing exclusively with Masco East. Even if proven, this would not make out the element of an *existing* contract or business relationship, which is necessary to a successful claim of tortious interference.

Finally, no adequate "business expectancy" is alleged because at most, Tidewater alleges that Masco East has coerced suppliers and consumers generally. The only "business expectancy" reasonably inferred from its allegations is the general expectancy to remain in business. As stated above, proof of interference with this general expectancy would not be sufficient to succeed on a claim of tortious interference.

Thus, Tidewater failed to allege the first element of any tortious interference claim

recognized in Virginia. Plaintiff Masco East's motion to dismiss for failure to state a claim upon which relief can be granted is therefore **GRANTED** against the tortious interference claims contained in Count III.

## IV. Conclusion

For the reasons set forth above, the court **GRANTS** Masco East's Motion to Dismiss all counts of the counterclaim. The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

IT IS SO ORDERED.